Slip Op. 20-33

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **SUMECHT NA, INC., d.b.a. SUMEC NORTH AMERICA,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**UNITED STATES,**<br><br>    **Defendant,**<br><br>    **and**<br><br>**SOLARWORLD AMERICAS, INC.,**<br><br>    **Defendant-Intervenor.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Court No. 17-00244** |

### OPINION AND ORDER

[Denying Plaintiff's motion for attorneys' fees.]

Dated:  March 12, 2020

Mark B. Lehnardt, Michael S. Snarr, Lindita Ciko Torza, and Jake Frischknecht, Baker Hostetler, LLP, of Washington, D.C., for Plaintiff Sumecht NA, Inc., d.b.a. Sumec North America.

Justin R. Miller, Attorney-in-Charge, International Trade Field Office, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of counsel was Mykhaylo A. Gryzlov, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Choe-Groves, Judge:  Before the court is an application for an award of attorneys' fees

and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, requested by

Plaintiff Sumecht NA, Inc., d.b.a. Sumec North America ("Sumecht").  Pl.'s Mem. in Supp. for

Appl. of Attorney's Fees Under the EAJA and Am. Br. in Supp., ECF Nos. 87–89 ("Pl. Mem.").[1]

Defendant United States ("Defendant") opposes the fee application.  Def.'s Mem. in Opp'n, ECF

No. 92 ("Def. Opp'n").  For the reasons set forth below, Sumecht's fee application is denied.

## I.    BACKGROUND

The court presumes familiarity with the facts and record of proceedings as set out in the

court's prior opinion and recounts only those facts relevant to the pending motion for attorneys'

fees.  See Sumecht NA, Inc. v. United States, 43 CIT ___, 399 F. Supp. 3d 1370, 1372–76

(2019).

Commerce initiated an antidumping duty investigation of certain solar cells from China

in 2011.  Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From

the People's Republic of China, 76 Fed. Reg. 70,960 (Dep't Commerce Nov. 16, 2011)

(initiation of antidumping duty investigation).  In reaching an affirmative determination and

issuing an antidumping order, Commerce concluded that Sumecht's affiliated exporter, Sumec

Hardware, satisfied its showing for separate status and was assigned the separate rate of 24.48%.

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the

People's Republic of China, 77 Fed. Reg. 63,791, 63,794 (Dep't Commerce Oct. 17, 2012) (final

determination of sales at less than fair value and affirmative final determination of critical

circumstances, in part), as amended by Crystalline Silicon Photovoltaic Cells, Whether or Not

Assembled Into Modules, From the People's Republic of China, 77 Fed. Reg. 73,018, 73,021

(Dep't Commerce Dec. 7, 2012) (amended final determination of sales at less than fair value and

---

[1] Sumecht filed a confidential and public version of its amended memorandum in support of its fee application. ECF Nos. 88 (Confidential Amended Brief) and 89 (Public Amended Brief).

antidumping duty order) (collectively, "AD Order"); Pl. Mem. in Supp. of Mot. for J. Upon the

Agency Rec. 21, ECF No. 61-1 (referring to Sumec Hardware as Sumecht's "affiliated

exporter").  The China-wide entity rate for exporters who did not establish separate rate status

was 238.95%.  AD Order, 77 Fed. Reg. at 73,021.

Petitioner and Defendant-Intervenor SolarWorld Americas, Inc. challenged the final

results of the investigation and Sumec Hardware's separate rate status.  Jiangsu Jiasheng

Photovoltaic Tech. Co. v. United States, 38 CIT ___, 28 F. Supp. 3d 1317 (2014), review after

remand, 39 CIT ___, 121 F. Supp. 3d 1263 (2015) ("Jiangsu Jiasheng").  The Jiangsu Jiasheng

litigation concluded when the court sustained Commerce's remand results in a confidential

opinion and entered judgment on October 5, 2015.  Jiangsu Jiasheng, 121 F. Supp. 3d at 1266.

The court issued a public version of the opinion on December 22, 2015.  Sumecht NA, Inc., 399

F. Supp. 3d at 1374.

On November 23, 2015, Commerce published a notice in the Federal Register regarding

the court's decision in Jiangsu Jiasheng that was not in harmony with Commerce's final

determination ("Timken Notice").[2]  Crystalline Silicon Photovoltaic Cells, Whether or Not

Assembled Into Modules, From the People's Republic of China, 80 Fed. Reg. 72,950 (Dep't

Commerce Nov. 23, 2015) (notice of court decision not in harmony and amended final LTFV

determination).  The Timken Notice reflected a change in Sumec Hardware's antidumping duty

rate from 13.18% to the 238.95% China-wide entity rate and stated that the new rate would apply

---

[2] "A 'Timken Notice' is a notice issued by Commerce if this Court or the U.S. Court of Appeals
for the Federal Circuit renders a decision that is not in harmony with Commerce's prior
determination."  Sumecht NA, Inc., 399 F. Supp. 3d at 1372 (citations omitted).

retroactively 39 days to October 15, 2015 (beginning on the tenth day after the court decided

Jiangsu Jiasheng).[3]  Id.  Commerce published the Timken Notice more than ten days after the

court decided Jiangsu Jiasheng.  Id.; Sumecht NA, Inc., 399 F. Supp. 3d at 1376–77.

    Sumecht filed suit in 2017 challenging Commerce's decisions to issue the late Timken

Notice and to make the new 238.95% rate effective retroactively to 39 days before Commerce

published notice of the new rate in the Federal Register.  Summons, ECF No. 1; Compl., ECF

No. 2; Am. Compl., ECF Nos. 15–16.  Sumecht filed a USCIT Rule 56.1 motion for judgment on

the agency record that was opposed by Defendant, and the court held oral argument in March

2019.  ECF Nos. 61, 70, 71, 78.

    Sumecht appealed this court's orders denying its motion for a preliminary injunction and

motion for reconsideration.  Sumecht NA, Inc. v. United States, 42 CIT ___, 331 F. Supp. 3d

1408 (2018); Notice of Interlocutory Appeal, ECF No. 66.  The U.S. Court of Appeals for the

Federal Circuit affirmed this court's denial of the motion for reconsideration and denial of the

requested injunction on May 8, 2019.  Sumecht NA, Inc. v. United States, 923 F.3d 1340, 1348

(Fed. Cir. 2019) (finding, in relevant part, that Sumecht failed to show irreparable harm absent

an injunction).

    The court decided Sumecht's motion for judgment on the agency record on September 6,

2019.  In a matter of first impression, the court found that Commerce's late publication of the

Timken Notice beyond the ten-day statutory timeframe violated 19 U.S.C. § 1516a(c)(1).

---

[3] Commerce lowered Sumec Hardware's rate from 24.48% to 13.18% for entries made on or
after August 2, 2015, as part of the Uruguay Round Agreements Act ("URAA") implementation.
Sumecht NA, Inc., 399 F. Supp. 3d at 1374 (citing Implementation of Determinations Under
Section 129 of the URAA, 80 Fed. Reg. 48,812, 48,818 (Dep't Commerce Aug. 14, 2015)).

Sumecht NA, 399 F. Supp. 3d at 1377.  The court determined also that the plain language of 19

U.S.C. § 1516a(c)(1) compelled liquidating the subject merchandise entered by Sumecht

between November 9, 2015 and November 23, 2015 at the 13.18% rate assigned in Commerce's

prior determination.  Id. at 1378.  The court then concluded that Defendant's late publication of

the Timken Notice "prejudiced the Plaintiff and amounted to more than harmless error."  Id. at

1379.

  Defendant did not appeal the court's decision.  Sumecht filed an application for an award

under 28 U.S.C. § 2412, EAJA.  In the application, Sumecht seeks an EAJA award of

$111,007.40.  Pl. Mem. at 16.

## II. DISCUSSION

  Sumecht argues that a fee award is appropriate under two provisions in the EAJA.

Sumecht contends that Section 2412(d)(1)(A) authorizes an award because (1) it is both an

eligible and prevailing party in the action against the United States; (2) Defendant took a position

that was not substantially justified; and (3) no special circumstances would make an award

unjust.  See Pl. Mem. at 6–11.  Alternatively, Sumecht contends that Section 2412(b) provides a

separate basis to award fees and expenses.  Id. at 7.  Defendant responds that Sumecht presented

insufficient evidence to meet the "prevailing party" eligibility criteria.  Def. Opp'n at 6.

Defendant argues that even if Sumecht qualifies as a prevailing party, its position was

substantially justified.  Id. at 13–22.  In the alternative, Defendant avers that special

circumstances bar an award.  Id. at 25.

### A.  Governing Law

The EAJA "ensure[s] that certain individuals, partnerships, corporations . . . or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved" in vindicating their rights.  Scarborough v. Principi, 541 U.S. 401, 407 (2004) (noting that Congress passed EAJA "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights" in actions brought by or against the United States); see Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.").

The court may award EAJA fees and other expenses when the applicant shows that it is an eligible and prevailing party in a civil action brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.  28 U.S.C. §§ 2412(d)(1)(A)–(B).  A "prevailing party" is one that "has been awarded some relief by the court."  Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532 U.S. 598, 603 (2001).  An eligible "party" includes a "partnership, corporation, . . . or organization," if the entity did not have more than 500 employees and its net worth did not exceed $7,000,000 at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B).

A plaintiff bears the burden of showing it is a "prevailing party" that meets the financial eligibility conditions (in this case, the net worth and headcount requirements) and that it filed a timely application containing an itemized account of fees and costs.  See Scarborough, 541 U.S. at 405, 414.  The Government bears the burden of showing that its position was substantially

justified.  Id. at 415 (citing, among other cases, Libas, Ltd. v. United States, 314 F.3d 1362, 1365

(Fed. Cir. 2003)).  The Government need do so only by a preponderance of the evidence.

De Allende v. Baker, 891 F.2d 7, 12 (1st Cir. 1988) (citation omitted).

      The phrase "substantial justification" means "justified to a degree that could satisfy a

reasonable person."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (noting the Government's

position must have a "reasonable basis both in law and fact"); see Patrick v. Shinseki, 668 F.3d

1325, 1330 (Fed. Cir. 2011) ("The government can establish that its position was substantially

justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a

particular statute or regulation.").  Thus, a prevailing party may recover fees in the "very small

category of cases" in which "the Government's position will be deemed so unreasonable as to

produce an EAJA award."  Pierce, 487 U.S. at 574.

      Even if the Government's position was not substantially justified, special circumstances

may bar granting a prevailing party an EAJA award.  See 28 U.S.C. § 2412(d)(1)(A).  The

"special circumstances" exception is intended to serve as a "safety valve . . . to [e]nsure that the

Government is not deterred from advancing in good faith the novel but credible extensions and

interpretations of the law that often underlie vigorous enforcement efforts."  Devine v.

Sutermeister, 733 F.2d 892, 895–96 (Fed. Cir. 1984) (quoting H.R. Rep. No. 96-1418, at 11, as

reprinted in 1980 U.S.C.C.A.N 4984, 4990) (internal quotation marks omitted).

### B.  Entitlement to Award Under Section 2412(d)

#### 1.  Prevailing Party Status

Defendant challenges the sufficiency of Sumecht's evidence as to net worth and number of employees that would satisfy a corporate applicant's prevailing party status.  Def. Opp'n at 6.[4] In its motion, Sumecht attached a declaration from the President and CEO of Sumecht and a copy of an independent auditor's report for the year ending 2017 to show that, at the time of filing this action on September 29, 2017, Sumecht's net worth did not exceed $7,000,000.  Pl. Mem. at 7, Ex. 3, Declaration of Alex Levran ("Levran Declaration" or "Levran Decl.") and 2017 Independent Auditor's Report and Financial Statements.

In this case, Sumecht put forth insufficient evidence to meet the prevailing party criteria. The Levran Declaration contains an assertion that "[t]hroughout 2017, Sumec NA, Inc. was operating at a loss and its net value[5] was below $7,000,000."  Levran Decl. ¶ 3.  Neither the declaration, nor the additional exhibits attached to the motion, make any mention of Sumecht's employee headcount as of the day it initiated this action on September 29, 2017.[6]  See Missouri Pac. Truck Lines, Inc. v. United States, 746 F.2d 796, 797–98 (Fed. Cir. 1984) ("The legislative

---

[4] Defendant does not contest that Sumecht obtained a judgment on the merits and timely filed its EAJA fee application that contained an itemized statement of fees and costs.

[5] The statute requires the applicant to show that its "net worth" does not exceed $7,000,000.  28 U.S.C. § 2412(d)(2)(B).  Levran asserts that Sumecht's "net value was below $7,000,000." Levran Decl. ¶ 3.

[6] Sumecht attached to its motion six exhibits: (1) this court's Slip Opinion and Judgment, dated September 6, 2019 (Slip Op. 19-118); (2) Itemized Statement of Fees; (3) Levran Declaration and 2017 Independent Auditor's Report and Financial Statements; (4) Affidavit of Counsel; (5) Biographies of Counsel of Record; and (6) CPI Information. Pl. Mem., Exs. 1–6.

history [of the EAJA] shows that Congress intended the 500 employees limit to be an additional

eligibility requirement for corporations.").  Sumecht's evidence in the form of the Levran

Declaration and 2017 Financial Statements as to meeting the net worth requirement are also

insufficient.  The Independent Auditor's Report accompanying the 2017 Financial Statements

lacks indicia of reliability.  Absent from the cover letter of the Independent Auditor's Report

accompanying the Financial Statements is a declaration from an accountant at the firm stating

who provided accounting services to Sumecht and that the accountant prepared the financial

statements using Generally Accepted Accounting Principles ("GAAP").  See Stromness MPO,

LLC v. United States, 140 Fed. Cl. 415, 433–34 (Fed. Cl. 2018) (finding sufficient evidence of

net worth being below $7,000,000 when the applicant provided a filed tax return, balance sheets,

and a declaration from an accountant who attested to preparing and filing the tax return and

financials using GAAP principles).

Even if Sumecht supplemented its 2017 Financial Statements, the court's consideration of

the net worth of Sumecht's parent company and affiliated exporter, Sumec Hardware, would

disqualify Sumecht from claiming an EAJA award.  Def.'s Opp'n, Ex. A (showing that

Sumecht's webpage lists the "financial health" of Sumecht as "part of a family of businesses"

and "backed by parent companies with over $39 Billion US in annual revenue").  When

evaluating net worth, courts in the Federal Circuit aggregate affiliated entities "when the

underlying litigation pursued by the EAJA claimant substantially benefitted another party, or if

the claimant was not the real party in interest to the underlying litigation."  See, e.g., Lion

Raisins, Inc. v. United States, 57 Fed. Cl. 505, 510 (Fed. Cl. 2003) (holding that aggregation of

affiliated entities is necessary when "the underlying litigation bestowed significant benefits on

entities other than the EAJA claimant[]").  Here, Sumecht derived a significant benefit from the

underlying litigation when Sumec Hardware participated in the antidumping duty investigation

and remand proceedings before Commerce and received a separate status and separate

antidumping duty rate of 24.48%.  The court concludes that Sumecht cannot assert prevailing

party status.

## 2.  Substantial Justification

Sumecht argues that Defendant maintained a position that was not substantially justified.

Pl. Mem. at 9.  In support, Sumecht cites a judge's comment made during oral argument before

the U.S. Court of Appeals for the Federal Circuit, as well as this court's decision granting

Sumecht's Rule 56.1 motion for judgment on the agency record concluding that Commerce's

actions rose above the level of harmless error.  Id.; Sumecht NA, Inc., 399 F. Supp. 3d at 1377,

1379.  Defendant contends that Commerce's issuance of the Timken Notice after the court's

decision in Jiangsu Jiasheng had a reasonable basis in law and fact because the matter involved a

novel issue and Commerce's actions showed an intent to give prompt effect to the court's

decision.  Def. Opp'n at 13–16.

In this case, the court finds that Defendant had substantial justification for maintaining its

position at the administrative agency level and defending the validity of the agency action in

court.  The record shows that Commerce sought to implement the court's decision within the ten-

day statutory timeframe set out in 19 U.S.C. § 1516a when it assigned the effective date of the

Timken Notice as the tenth day after the court decided Jiangsu Jiasheng.  See Diamond

Sawblades Mfrs. Coalition v. United States, 650 F. Supp. 2d 1331, 1356 (2009), aff'd, 626 F.3d

1374 (Fed. Cir. 2010) (noting "the basic proposition that all orders and judgments of courts must

be complied with promptly" (quoting <u>Maness v. Meyers</u>, 419 U.S. 449, 458 (1975)).  The legal

merits of Defendant's position also had a basis in the record.  The fact that Defendant maintained

a consistent position throughout this action when it implemented the court's decision and

imposed a retroactive duty rate supports a finding of substantial justification.  <u>See</u> <u>Patrick</u>, 668

F.3d at 1330.  The uncertainty in the law during the underlying litigation also supports a

conclusion that Defendant's position was substantially justified.  As this court recognized, late

publication of the <u>Timken Notice</u> presented a novel issue.  <u>Sumecht NA, Inc.</u>, 399 F. Supp. 3d at

1377 n.2 (recognizing the absence of challenges to late issuance of the <u>Timken Notice</u> when

Commerce applied a lower duty rate); <u>see</u> <u>Cody v. Caterisano</u>, 631 F.3d 136, 142 (4th Cir. 2011)

(noting that "litigating cases of first impression is generally justifiable" (citations omitted));

<u>Saysana v. Gillen</u>, 614 F.3d 1, 6 (1st Cir. 2010) (When "a case presents a novel issue and one on

which there is little precedent, courts have found that an award of EAJA fees is not warranted."

(citation omitted)); <u>Vacchio v. Ashcroft</u>, 404 F.3d 663, 675 (2d Cir. 2005) (holding that the

Government's position was substantially justified when no binding precedent supported the

plaintiff's position, "the issue [wa]s far from settled law," and "the Government's legal argument

[wa]s far from unreasonable").  That Defendant was unsuccessful in the litigation does not

support a presumption that its position was unreasonable.  <u>Aronov v. Napolitano</u>, 562 F.3d 84, 94

(1st Cir. 2009) (en banc) (citing <u>Pierce</u>, 487 U.S. at 566 n.2) ("[T]he position of a government

agency can be substantially justified even if a court ultimately determines the agency's reading

of the law was not correct.").  The court concludes that Defendant's position was substantially

justified because it advanced a novel issue and credible legal theory, though incorrect, in good

faith that had a reasonable basis in both law and fact.[7]  Because the court finds Defendant's

position was substantially justified, it need not decide whether special circumstances would

make a fee award unjust.

### C.  Entitlement to Award Under Section 2412(b)

Sumecht contends that Section 2412(b)'s common law cost-shifting analysis justifies an

award.  Pl. Mem. at 7.  Defendant points to the absence of supporting evidence or development

of Sumecht's argument seeking fees under Section 2412(b) and avers that, in any event, there is a

lack of record evidence showing that Defendant acted in bad faith.  Def. Opp'n at 26–27.

Under Section 2412(b), Defendant retains liability for fees and costs "to the same extent

that any other party would be liable under common law or under the terms of any statute which

specifically provides for such an award."  Starry Assocs., Inc. v. United States, 892 F.3d 1372,

1377 (Fed. Cir. 2018).  The common law or "American Rule" directs that parties typically are

responsible for their own attorneys' fees.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,

421 U.S. 240, 247 (1975).  A recognized exception to the American Rule allows fee-shifting

"when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."

Id. at 258–59 (internal quotation marks and citations omitted); see also Centex Corp. v. United

States, 486 F.3d 1369, 1371–75 (Fed. Cir. 2007) (discussing Section 2412(b) fee awards under

the bad-faith exception to the American Rule).  Here, the court finds no grounds to award fees

---

[7] Sumecht's insistence that this court rely on a judge's comment made during oral argument at
the U.S. Court of Appeals for the Federal Circuit supporting Sumecht's position has a fatal flaw
in that the appeals court affirmed this court's decision denying the injunction and did not discuss
the language of 19 U.S.C. § 1516a.  Sumecht NA, Inc., 923 F.3d at 1348; see, e.g., Dellew Corp.
v. United States, 855 F.3d 1375, 1377 (Fed. Cir. 2017) (recognizing that a "strong comment by a
trial court is not tantamount to a ruling on the merits or a court order").

under Section 2412(b) when the record contains no evidence that Defendant acted in bad faith

while maintaining its position or acted with improper purpose.

## III.   CONCLUSION

For the foregoing reasons, the court concludes that Sumecht does not qualify for an

EAJA award.  Accordingly, it is hereby **ORDERED** that Sumecht's motion for fees,

ECF No. 87, is denied.


                                                        /s/Jennifer Choe-Groves
                                                     Jennifer Choe-Groves, Judge

Dated:     March 12, 2020
                New York, New York